***********
The Full Commission reviewed the prior Decision and Orders, based upon the record of the proceedings before Chief Deputy Commissioner Gheen and Deputy Commissioner Glenn, and the briefs before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Decision and Orders. Accordingly, the Full Commission affirms the Decision and Orders of Chief Deputy Commissioner Gheen, and Deputy Commissioner Glenn.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was an inmate of defendant NCDOC at the Pasquotank Correctional Institute on June 27, 2000.
2. Correctional Officers employed by the NCDOC searched plaintiff's living quarters on that date. Plaintiff is self-studied in the law and, contrary to NCDOC policy, provided "legal services" to other inmates.
3. Plaintiff contends that a quantity of legal materials were damaged or destroyed as a result of the search. Specifically, a bottle of shampoo spilled on plaintiff's bed. The shampoo bottle was plastic and the top was broken. A number of items, mostly books and documents, were placed over the spilled shampoo, ruining the materials. In addition, some items were torn, apparently being stepped on during the search process.
4. Plaintiff does not allege damages for legal transcripts or other materials not related to his legal proceedings.
5. Approximately two-hundred correctional officers, divided into teams, searched numerous cells on June 27, 2000. Correctional officers may change teams or partners during a search. The greater weight of the evidence establishes these general practices during searches:
a. The search is for any contraband;
b. Searches are not routinely videotaped;
c. Any book or other written materials are opened and every page is searched;
d. When searching shampoo bottles that are not clear to inspection, the top is usually removed and the contents inspected visually; and,
e. If an item is broken or damaged during a search, the correctional officers are to report to their supervising officer.
6. Two correctional officers who participated in the search process testified they do not recall breaking anything, including a shampoo bottle.
7. Assistant Unit Manager Officer Todd observed plaintiff's cell approximately four hours after the search. Plaintiff had returned to his cell some three hours prior. Officer Todd observed a number of papers on plaintiff's bed, but nothing on the floor. Plaintiff registered a verbal complaint regarding the state of his paperwork.
8. The testimonies of Correctional Officers William Stallings and John R. Gray were impeached to a limited degree. The officers each testified at trial that they could not specifically recall searching plaintiff's living quarters; however, in a NCDOC grievance filed by plaintiff, both officers responded that they had searched plaintiff's quarters. Officers Stalling and Gray each testified that they assumed that they had searched plaintiff's cell because the grievance contended that they had done so. As a general proposition, correctional officers who are from other institutions would not know the names of inmates whose cells they searched.
9. NCDOC impeached plaintiff's testimony based on a number of prior convictions, specifically including property theft crimes.
10. Plaintiff has proven by the greater weight of the evidence that one or more employees or agents of the NCDOC broke a shampoo bottle and then placed written materials in such proximity that the items listed in Plaintiff's Affidavit were damaged or destroyed.
11. Plaintiff testified that the following books were damaged or destroyed by defendant's agents:
a. Secret Tools by Joe Allen Bounds; $69.00;
b. Arrest Search Seizure by Robert L. Fabb; used, $20.00;
c. Elements of Crimes by Institute of Government; used, $20.00;
d. Copied pages of a book on malpractice by Randal V. Worley; copying costs of $20.00;
e. Post Conviction Remedies, unknown author; $19.95;
12. Plaintiff testified that it cost him $1.95 per page to replace a transcript and record on appeal, which were damaged or destroyed, for a total cost of $920.00.
13. Plaintiff testified that he paid $10.00 for the set of headphones that was damaged or destroyed by defendant's agents.
14. Plaintiff did not offer any evidence as to the actual value of the items that he claims were damaged or destroyed. It does appear that plaintiff did sustain some damages, but not in the amount that he is seeking to recover. Thus, based upon the evidence of record, the Full Commission finds the sum of $50.00 to be a reasonable fair market value of plaintiff's materials that were damaged or destroyed by defendant's agents.
 ***********
Based upon the foregoing findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff has proven by the greater weight of the evidence that the NCDOC, by and through its employees, was negligent and violated the applicable standard of care in the handling of plaintiff's property, which resulted in the loss of his personal property as set forth in Plaintiff's Affidavit, and for which plaintiff is entitled to damages. N.C. Gen. Stat. § 143-291, et seq.
 2. Plaintiff is not contributorily negligent as the search of his livingquarters by employees or agents of the NCDOC was in the exclusive controlof those employees or agents. N.C. Gen. Stat. § 143-291(a).
 *********** Based upon the foregoing findings of fact and conclusions of law, theFull Commission enters the following:
 ORDER
1. Plaintiff shall have and recover from the defendant the sum of $50.00.
2. Each side shall bear its own costs.
This 10th day of August 2005.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER